ANGELIKE KATSURA, APPELLEE, V. GEORGE SALETOPULOS, APPELLANT.

FILED APRIL 17, 1914. No. 17,748.

Appeal: CONFLICTING EVIDENCE. The verdict of a jury will not be inter-
fered with where it is. rendered upon conflicting evidence and there
is sufficient competent evidence to support the same.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE. *Affirmed.*

*Louis J. Piatti,* for appellant.

*Sullivan & Rait* and *John O. Yeiser, contra.*

HAMER, J.

This action was brought in the district court for Doug-
las county for an alleged breach of promise to marry.
There was a verdict in favor of the plaintiff, and judg-
ment was rendered thereon. The defendant prosecutes an
appeal.

It is said in the entertaining brief of counsel for the
appellant that the testimony on behalf of the plaintiff is
flimsy and unreliable, and *Tyler v. Hoover,* 92 Neb. 221,
is cited. In that case it was said: "Where a verdict is
so clearly wrong as to induce the belief on the part of the
reviewing court that it must have been found through pas-
sion, prejudice, mistake, or some means not apparent in
the record, it will be set aside." It is contended with some
ingenuity and great energy that there is nothing whatever
to sustain the verdict. It may be remarked that a prom-
ise to marry need not be in writing. It generally needs
favorable surroundings, a proper time of life, and the
natural inducement of association. An examination of
this record shows these essentials. The defendant, George
Saletopulos, was born and raised in the village of Andre-
itsena, Greece. He had a neighbor who was the father of
the little girl who grew up and became the plaintiff in this

case. Her name is Angelike Katsura. The father came to the United States and brought the plaintiff and one of her younger sisters with him. He was a bookkeeper for the government in Athens, Greece. The parties were immediate neighbors in the little village. The young man came to America, settled in Omaha, and became prosperous. News of his prosperity was carried back to Athens by Mr. Frankadonis. He was on a visit and told the plaintiff's father that the defendant was prosperous and unmarried. A correspondence began between the plaintiff's father and the defendant. The successful Greek sent to his old neighbor sufficient funds to come to America and bring the daughter with him. The father had been told that the prosperous Saletopulos had thought of Angelike as a suitable bride. The families had lived in adjoining houses and so were well acquainted. When the father and his daughter arrived Saletopulos was at once attentive. He had an automobile. This was occupied during his spare time from business by himself and the young lady. They went all about. They were constantly together. They were at the high school grounds, at the theatres, and went to all places that seemed inviting. According to the testimony of the plaintiff, the young man talked marriage to her immediately after she arrived. He talked it on the first evening and kept it up with great regularity after that for more than nine months. There could not be anything more appropriate under the circumstances. The father had left part of his family behind him because unable to bring all. He had come to the new country because of the prospect of a good husband for the eldest daughter who had arrived at marriageable age. His daughter was the childhood friend of the defendant. He was the father of six daughters. He was naturally solicitous to provide for his children. He had reared and educated these six daughters and he was to do the best for them that he could.

Having won the daughter, the defendant seems to have lingered on the edge of matrimony. He put the girl off from month to month. It was a case of hope deferred. When the defendant was about to start on a return visit to

his native land the plaintiff sued him. He has denied the promise to marry, but his conduct seems to fully support it. The plaintiff's testimony is corroborated by the admitted conduct of the defendant. He does not deny his association with the plaintiff, nor the things which tend to show that the plaintiff's testimony is to be believed. He denies a few things, but they are isolated facts. The companionship, the rides in the automobile, the visit to theatres, and all the things which tend to establish a devoted courtship are undenied. The plaintiff testified that he said to her little sister Georgia, in her presence, "He thought we was going to get married, he say we will take you with him and your papa, too." From this it appears that he had gone so far as to provide how they were to live in the future. He denies it, but he does it in a feeble-hearted sort of way, and Georgia testified that he promised to marry her sister. She says in her poor English: "He get my sister to marry." From a careful reading of the evidence we are unable to see how the jury could have reached a different conclusion than that which it did reach.

It is objected that evidence was admitted tending to show that the plaintiff had told her father and sister and had written friends in Greece of her betrothal to the defendant. This sort of testimony is competent because it tends to establish an element of damages, the humiliation of the plaintiff and injury to her feelings because she had been discarded. *Liebrandt v. Sorg*, 133 Cal. 571; *Reed v. Clark*, 47 Cal. 194; *King v. Kersey*, 2 Ind. 402. In *Liebrandt v. Sorg*, a witness, under objection by the defendant, was permitted to answer the question as to whether Mrs. Liebrandt had said that she was going to marry Mr. Sorg. The court said it is elementary law that evidence of this character is inadmissible as tending to prove the agreement to marry. But this character of evidence is admissible as tending to increase plaintiff's damages occasioned by a breach of the contract, and it was upon this theory that it was offered and admitted before the jury. In that case it was said: "This character of evidence is

always admitted after a *prima facie* showing of the existence of the agreement to marry and a breach thereof." In *Reed v. Clark,* it was said: "It cannot be doubted that knowledge of the fact of a marriage engagement by the intimate friends and relatives of a party to the contract, with whom she has frequent and familiar intercourse, would increase in a considerable degree the annoyance and mental suffering occasioned by a sudden discontinuance of the relationship, * * * but the announcement of the engagement to a few intimate friends may be neither improper nor unbecoming, and certainly requires no express authorization. We think the jury should be permitted to consider this, with the other circumstances of the case, in estimating the injury occasioned to the plaintiff by breach of the contract." In *King v. Kersey* the court said, as to the declarations, that there was doubt, but that the judges had "concluded that said declarations, made while she was receiving the visits of the defendant, and before any estrangement had commenced, to members of her family, were admissible, for the purpose above mentioned, as part of the *res gestae,* explanatory of her conduct and intention in receiving those visits, whether with a view to marriage or from mere politeness, and thus tending to show a promise on her part of marriage."

Taken as a whole, the evidence on behalf of the plaintiff is most convincing. Giving to the defendant's denials the greatest consideration to which they are entitled, it must, in any event, be said that there is a conflict of evidence. It was for the jury to determine that conflict. It has done so. We find in the record all that is necessary to sustain the verdict.

The judgment of the district court is

AFFIRMED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.